AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>**DOUGLAS SMALLWOOD, JR.**<br><br>Defendant. | )<br>)<br>)  Case No.  5:25-MJ-100 (ML)<br>)<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of February 11, 2025 in the county of Oneida in the Northern District of New York the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(C) | Possession with intent to distribute a controlled substance |

This criminal complaint is based on these facts:
See attached affidavit.

☒   Continued on the attached sheet.

COLIN GROSSER
Digitally signed by COLIN GROSSER
Date: 2025.04.03 11:46:58 -04'00'

_Complainant's signature_

Colin Grosser, Special Agent, ATF

_Printed name and title_

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: April 3, 2025

_Judge's signature_

City and State:   Binghamton, NY         Hon. Miroslav Lovric, U.S. Magistrate Judge

_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Colin Grosser, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of a criminal complaint charging Douglas SMALLWOOD, JR. with violating Title 21, United States Code, Section 841(a)(1), possession with intent to distribute and distribute a controlled substance.

2. I am the applicant herein and I am currently assigned to the Syracuse Field Office as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I have been employed with ATF since November 2000. I graduated from Cleveland State University, receiving a Bachelor of Business Administration in Finance. To become an ATF Special Agent, I attended and completed the Criminal Investigator Training Program and the ATF Special Agent Basic Training program at the Federal Law Enforcement Training Center in Glynco, Georgia. During this academy, I received training in and was tested on my knowledge of: law and criminal procedure relevant to the enforcement of violations of Title 18, 21, and 26 of the United States Code; electronic and physical surveillance; controlled purchases of evidence; using confidential informants; interviewing suspects and other sources of information; field testing illegal drugs; executing search and arrest warrants; processing evidence; and many other techniques used for the successful investigation and prosecution of criminal violations. I work with a team of experienced criminal investigators from the ATF, and I regularly liaise with members of other federal, state, and local law enforcement agencies with whom I consult and confer regarding criminal investigations. I have participated in numerous controlled purchases resulting in the recovery of firearms and illegal drugs. I have participated in the execution of numerous search warrants resulting in the recovery of firearms and illegal drugs. As a result of my training and experience, I am familiar with the language, conduct, and customs of people

engaged in selling drugs. In addition to my above-mentioned experience, I have had the opportunity to speak with and observe other federal and state officers regarding the way narcotics and firearms are unlawfully possessed, sold, and distributed. My training and experience, as well as information I have learned from other law enforcement officers, serves as the basis for any opinions or conclusions set forth below.

3. I have personally participated in an investigation regarding Douglas SMALLWOOD's distribution and possession with the intent to distribute controlled substances.

4. The facts in this affidavit are based on my personal knowledge from my participation in this investigation, conclusions based on my training and experience, and on information I have learned from the following sources:

   a) Oral and written reports and photographs about this investigation by members of the Utica Police Department and members of other state or local law enforcement agencies.

   b) Public records;

   c) Law enforcement databases; and

   d) Evidence gathered through other law enforcement investigations.

5. I have not included all facts known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause for the requested criminal complaint. Some dates and times mentioned in this affidavit are best approximations.

### FACTS SUPPORTING PROBABLE CAUSE

**A. Controlled Purchases of Heroin/Fentanyl from SMALLWOOD (May 2021 through February 2022)**

6. Beginning in 2021, ATF Syracuse developed information that Douglas

SMALLWOOD was distributing a heroin/fentanyl mixture in and around Utica, NY. In furtherance of the investigation into SMALLWOOOD, from approximately May 2021 through February 2022, ATF agents directed a confidential informant ("CI #1")[1] to conduct 6 controlled purchases from SMALLWOOD. Five of those transactions were completed directly from SMALLWOOD, four of which occurred at SMALLWOOD's residence at the time (Residence A). One additional controlled purchase from an unknown individual at Residence A. Two of these controlled purchases are described below.

7.  The first controlled purchase occurred in May 2021. Investigators met with CI #1 at a pre-determined meeting location. They searched his/her person and did not find any drugs, money, or weapons. CI #1 was given a transmitting/recording device. CI #1 also was given cash to purchase fentanyl/heroin.[2] CI #1 showed investigators text messages that s/he described as the communications with SMALLWOOD to arrange the purchase of fentanyl/heroin. Investigators directed CI #1 to travel to Residence A in Utica, NY and followed the CI to this location. They did not observe CI #1 make any stops or interact with anyone along the way. Investigators established surveillance in the vicinity of Residence A. CI #1 then met SMALLWOOD[3] at the

---

[1] CI #1 cooperated with the ATF for financial benefit from March 2021 to January 2024. CI #1 had several previous arrests for criminal possession of a controlled substance and one felony conviction for criminal sale of a controlled substance.

[2] Based on my training and experience and the training and experience of other investigators who are familiar with the types of controlled substances known to be sold by SMALLWOOD and his associates, and lab tests described below in this affidavit, I know that the substance that SMALLWOOD sells to users is often a mixture of both fentanyl and heroin.

[3] Investigators identified the seller as SMALLWOOD as follows: (1) CI #1 identified him; (2) investigators had identified Address A as SMALLWOOD's residence; and (3) investigators observed SMALLWOOD on video from one of the controlled buys that occurred at Address A. They recognized SMALLWOOD on that video by comparison to a known photograph of SMALLWOOD.

3

back door of Residence A, where the CI paid SMALLWOOD $550.00 in exchange for approximately 14.5g of suspected heroin/fentanyl. CI #1 left the area while still under the surveillance of investigators, who did not observe the CI make any stops or interact with anyone along the way. The CI was then met by investigators. From the CI, investigators recovered a large plastic baggie holding 21 smaller/individual baggies containing a substance that was later field-tested and determined to contain heroin. Investigators searched CI #1's person and did not find any drugs, money, or weapons. During a debriefing, investigators showed CI #1 a known photograph of SMALLWOOD and CI #1 identified SMALLWOOD as the individual that sold the CI the substance containing heroin.

8.    One of the other controlled purchases occurred in January 2022. Investigators met with CI #1 at a pre-determined meeting location. They searched his/her person and did not find any drugs, money, or weapons. CI #1 was given a transmitting/recording device. CI #1 also was given cash to purchase fentanyl/heroin. CI #1 showed investigators text messages that s/he previously exchanged with SMALLWOOD to arrange the purchase of fentanyl/heroin. Investigators directed CI #1 to travel to Address A in Utica, NY and followed the CI to this location. They did not observe CI #1 make any stops or interact with anyone along the way. Investigators established surveillance in the vicinity of Address A.  CI #1 then met SMALLWOOD inside Address A, where the CI paid SMALLWOOD $600.00 in exchange for approximately 9.5g of suspected heroin/fentanyl. A female, believed to be SMALLWOOD's girlfriend, was also inside the residence during the sale. During the sale, CI #1 spoke with SMALLWOOD about purchasing a firearm from him. SMALLWOOD stated he could sell the CI a handgun for $1,000.00. CI #1 left the area while still under the surveillance of investigators, who did not observe the CI make any stops or interact with anyone along the way. The CI was

4

then met by investigators. From the CI, investigators recovered a large plastic baggie holding several smaller/individual baggies containing a substance that was later field-tested and determined to contain heroin. Investigators searched CI #1's person and did not find any drugs, money, or weapons. During a debriefing, CI #1 identified SMALLWOOD as the individual that sold the CI the heroin/fentanyl, as this was the same individual CI #1 purchased heroin/fentanyl from during previous controlled purchases. The substance purchased was later sent for laboratory analysis and found to contain both heroin and fentanyl.

  **B. Continued Investigation of SMALLWOOD and Additional Controlled Purchases (2025)**

  9. In January 2025, investigators with the Utica Police Department (UPD) received credible information from a separate confidential informant (CI #2)[4] regarding ongoing fentanyl trafficking and distribution by SMALLWOOD, utilizing the first-floor residence of Residence B in Utica, NY.

  10. While conducting surveillances at Residence B, UPD investigators observed SMALLWOOD routinely arriving and departing the residence.

  11. During surveillance at Residence B, UPD investigators also routinely observed a volume of vehicular traffic at the same location. During these instances, the individuals arriving at Residence B would enter and exit the residence after a short period of time. Based on their training and experience, UPD narcotics investigators found these actions to be consistent with the distribution and purchasing of illegal drugs and other illegal activity.

---

[4] CI #2 is currently providing information to the Utica Police Department in exchange for consideration on a Misdemeanor Criminal Possession of a Controlled Substance in the Seventh Degree (NY PL 220.03) charge which has not been filled with the courts. CI #2 has no criminal history.

12. In early 2025, UPD investigators conducted two controlled purchases of fentanyl from SMALLWOOD utilizing CI #2. The first of these controlled purchases took place in January 2025. Investigators met with CI #2 at a pre-determined meeting location. They searched his/her person and did not find any drugs, money, or weapons. CI #2 was given cash to purchase fentanyl/heroin. CI #2 informed the investigators that s/he previously contacted SMALLWOOD by phone at XXX-XXX-4028 to arrange the purchase of fentanyl. This call was not recorded and was not observed by investigators. Investigators directed CI #2 to travel to 1 Residence B and followed the CI to this location. They did not observe CI #2 make any stops or interact with anyone along the way. Investigators established surveillance in the vicinity of Residence B. CI #2 was then observed entering the rear door of Residence B. CI #2 then exited while still under the surveillance of investigators, who did not observe the CI make any stops or interact with anyone along the way. The CI was then met by investigators. From the CI, investigators recovered several knotted bags containing a substance that was later field-tested and determined to be fentanyl. CI #2 stated they purchased the fentanyl from an individual inside Residence B. Investigators showed CI #2 a known photograph of SMALLWOOD. After reviewing the photograph, CI #2 positively identified SMALLWOOD as the individual who had just sold him the substance. Investigators searched CI #2's person and did not find any drugs, money, or weapons.

13. The second UPD controlled purchase took place in February 2025. Investigators met with CI #2 at a pre-determined meeting location. They searched his/her person and did not find any drugs, money, or weapons. CI #2 was given cash to purchase fentanyl. In the presence of investigators, CI #2 contacted SMALLWOOD by phone at XXX-XXX-4028 to arrange the purchase of fentanyl. Investigators directed CI #2 to travel to Residence B and followed the CI

to this location. They did not observe CI #2 make any stops or interact with anyone along the way. Investigators established surveillance in the vicinity of Residence B. CI #2 was then observed entering the rear door of Residence B. CI #2 then exited while still under the surveillance of investigators, who did not observe the CI make any stops or interact with anyone along the way. The CI was then met by investigators. From the CI, investigators recovered knotted bags containing a substance that was later field-tested and determined to contain fentanyl. CI# 2 stated that he/she had purchased the fentanyl from an individual inside Residence B. Investigators showed CI #2 a known photograph of SMALLWOOD. After reviewing the photograph, CI #2 positively identified SMALLWOOD as the individual who had just sold him the substance. Investigators searched CI #2's person and did not find any drugs, money, or weapons.

   C. **Execution of Search Warrant at Residence B (Feb. 11, 2025)**

   14. On or about February 7, 2025, UPD obtained a search warrant from Utica City Court for the first-floor residence of Residence B and the person of SMALLWOOD. The search warrant authorized the seizure of, among other things, fentanyl, U.S. currency, packaging material, and cellular phones.

   15. On or about February 11, 2025, UPD investigators executed the search warrant at Residence B and located, among other evidence, the following:

   a. Among the items found in a backpack from the front bedroom:

     i. Approximately 789 individual plastic bags containing a white powdery substance, later field-tested presumptive positive for the presence of fentanyl (447.6 grams gross weight, with packaging);

     ii. Three loaded pistols;

       iii. 4 digital scales; and

       iv. 3 boxes of sandwich bags.

   b. Contained in a black safe in the same front bedroom, among other things:

       i. A suspected Glock Conversion Device[5]

       ii. A U.S. passport and birth certificate, both for SMALLWOOD; and

       iii. Several personal papers which contained SMALLWOOD's name.

## CONCLUSION

16. Based on the information above, I respectfully submit that there is probable cause to believe that DOUGLAS SMALLWOOD, JR. has violated Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), possession with intent to distribute a controlled substance, the violation involving fentanyl, and respectfully request that the Court authorize the filing of a criminal complaint and issuance of an arrest warrant.

ATTESTED TO BY THE APPLICANT IN ACCORDANCE WITH THE REQUIREMENTS OF RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

COLIN GROSSER
Digitally signed by COLIN GROSSER
Date: 2025.04.03 12:04:43 -04'00'

Colin Grosser, Special Agent
Bureau of ATF

I, the Honorable Miroslav Lovric, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on April 3, 2025, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Hon. Miroslav Lovric
U.S. Magistrate Judge

---

[5] A Glock Conversion Device, commonly referred to as a "Glock Switch," is a part or combination of parts, designed and intended for use in converting a semiautomatic Glock pistol into a machinegun. According to ATF interpretation, this device meets the statutory definition of a "machinegun."

8